**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO PATROL SPECIAL POLICE OFFICERS ALAN BYARD, an individual, ROBERT L. BURNS, an individual, CALVIN C. WILEY, an individual, JOHN J. ANDREWS, an individual, SCOTT HART, an individual, TODD HART, an individual, SAMUEL J. REYES, SR., an individual, THEODORE TORRES, an individual, JOHN BARRY, an individual, SERGE J. WHITE, an individual, HANLEY CHAN, an individual, EARL L. CURTIS, an individual, ANTHONY CIRIMELE, an individual, JOHN FITZINGER, an individual, THE SAN FRANCISCO PATROL SPECIAL POLICE OFFICERS ALLIANCE, a public benefit corporation, THE SAN FRANCISCO PATROL SPECIAL POLICE OFFICERS ASSOCIATION INC., a public benefit corporation, and SAN FRANCISCO PATROL POLICE, an unincorporated association,<br><br>            Plaintiffs,<br><br>   v.<br><br>THE CITY AND COUNTY OF SAN FRANCISCO, a public incorporation, THE SAN FRANCISCO POLICE DEPARTMENT, a public incorporation, SERGEANT GERALD DARCY, an individual, INSPECTOR MARTIN OHALLORAN, an individual, SERGEANT UEUGEN GELEANO, an individual, SERGEANT JOHN BRAGAGNOLO, an individual, SERGEANT JESUS PENA, an individual, OFFICER MICHAEL SIMMONS, an individual, SERGEANT PETER THOSHINSKY, an individual, OFFICER JOHN VAN KOLL, an individual, OFFICER THOMAS CUNNANE, an individual, OFFICER RANDY LY, an individual, and DOES 1 through 10,000, inclusive,<br><br>            Defendants.<br>_____/ | No. C 16-00691 WHA<br><br>**ORDER RE MOTION FOR A MORE DEFINITE STATEMENT AND FOR DISMISSAL OF CONTRACT CLAIM AND DISMISSAL OF INDIVIDUAL DEFENDANTS** |

**INTRODUCTION**

In this action alleging efforts by San Francisco to undermine the business of a private police force, plaintiffs filed a fifth amended complaint, asserting federal claims for the first time. Defendants removed to federal court and now move for a more definite statement. Defendants also move to dismiss all constitutional claims against individual defendants. Finally, defendants move to dismiss plaintiffs' contract claim. For the reasons stated below, defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

**STATEMENT**

Our plaintiffs are fourteen officers of the San Francisco Patrol Special Police, an unincorporated association of civilians that offers private security and street patrol services. The Patrol Specials formed in the mid-19th century, the pleading states, because defendant City of San Francisco, then in its infancy, lacked the funds to pay the San Francisco Police Department (also a defendant) to patrol the streets. Local merchants and residents could privately purchase street patrol services from the Patrol Specials, although the Patrol Specials remained subject to regulation by the Police Commission. The Patrol Specials allegedly helped reduce the SFPD's workload and the City's financial burden, and provided backup to the SFPD during strikes or emergencies.

The Section 4.127 of the San Francisco City Charter authorized the appointment of the Patrol Specials as follows:

> PATROL SPECIAL POLICE OFFICERS. The Commission may appoint patrol special police officers and for cause may suspend or dismiss patrol special police officers after a hearing on charges duly filed with the Commission and after a fair and impartial trial. Patrol special police officers shall be regulated by the Police Commission, which may establish requirements for and procedures to govern the position, including the power of the Chief of Police to suspend a patrol special police officer pending a hearing on charges. Each patrol special police officer shall be at the time of appointment not less than 21 years of age and must possess such physical qualifications as may be required by the Commission.

The City never employed any officers of the Patrol Specials. Rather, the officers applied for approval from the City to offer police services to private entities for hire. Upon

approval, an officer of the Patrol Specials could wear a uniform and a badge, but had no authority beyond that of an ordinary civilian and never became affiliated with the SFPD.

The officers of the Patrol Specials operated (and still operate) in geographic areas called "beats" designated by the Police Commission pursuant to Section 4.127 of the City Charter:

> Patrol special police officers may be designated by the Commission as the owners of a certain beat or territory which may be established or rescinded by the Commission. Patrol special police officers designated as owners of a certain beat or territory or the legal heirs or representatives of the owners may dispose of their interest in the beat or territory to a person of good moral character, approved by the Police Commission and eligible for appointment as a patrol special police officer.

The "owner" of a beat patrolled his beat and offered private police services therein. The "owners" hired assistants and other personnel, though such hiring required approval from the Police Commission. Upon retirement, the "owners" generally sold their rights in their respective beats to other individuals approved as officers.

Generally, civilians *other than* Patrol Specials may register with the City to provide independent private patrol services; however, Section 1750.5 of the San Francisco Municipal Police Code provides, "[s]uch registration shall be disapproved where the territory sought [by the applicant] has been allocated to a patrol special officer appointed pursuant to [the City Charter]." That is, the City allegedly must reject any application to provide private patrol services within a beat owned by an officer of the Patrol Specials.

This action concerns alleged actions taken by the City and the SFPD to undermine the Patrol Specials. Specifically, the City offered supplemental police services, provided by sworn police officers upon request by civilians (for special events like street fairs or for general safety patrols). These services were paid for by the requesting civilian pursuant to Chapter 10B of the San Francisco Administrative Code. Chapter 10B authorizes the Chief of Police to provide "additional personnel, equipment or materials of the San Francisco Police Department for law enforcement purposes" to private entities. Any individual or entity that requests additional services pursuant to Chapter 10B must pay for them, and the SFPD compensates its officers for any additional work performed. The Patrol Specials contend that this competition from official police has interfered with their Patrol Special rights.

3

Additionally, the City allegedly began enforcing certain regulations that governed the Patrol Specials, including imposing fees, background checks, and inspections, and requiring the Patrol Specials to disclose their client lists. SFPD also allegedly made public statements disparaging the Patrol Specials. Finally, SFPD limited or obstructed the processing of hiring applications for assistant Patrol Specials, leaving the Patrol Specials short staffed when patrolling their respective beats causing them to lose business and devaluing the beats (Fifth Amd. Compl. ¶¶ 31–71).

Plaintiffs commenced this particular action in 2012 in Contra Costa County Superior Court against the City and several individual police officers (Dkt. No. 1-2). They filed a first amended complaint asserting the same causes of action before serving the defendants (Dkt. No. 1-3). Defendants successfully moved to transfer venue to the San Francisco Superior Court (Dkt. No. 3-4). In March 2013, plaintiffs filed a second amended complaint adding several additional plaintiffs and asserting the same causes of action (Dkt. 1-11). Defendants demurred to the nuisance and unfair business practice causes of action as against the city as asserted in the second amended complaint and moved to strike allegations that Chapter 10B violated the City Charter and Police Code to the extent it gave the SFPD the right to charge third parties for services provided thereunder. Demurrer was sustained as to unfair business practices but overruled as to nuisance. The motion to strike was denied as "too fine a point at the pleading stage" (Dkt. No. 3-5).

Plaintiffs sought leave to file a third amended complaint to add more plaintiffs and to add two causes of action under the state constitution, which motion was granted. Defendants demurred on various grounds. Demurrer was sustained without leave to amend as to nuisance and the Cartwright Act, and with leave to amend as to negligence and defamation (Dkt. No. 6-1). Plaintiffs then filed a fourth amended complaint, which added various causes of action, including inverse condemnation. Defendants demurred as to inverse condemnation on preclusion grounds and to the complaint as a whole because plaintiffs failed to identify which parties brought which claims. Demurrer was sustained on both grounds, and leave to amend was granted to allow plaintiffs to identify "who was suing for what." The order sustaining the

4

demurrer directed the parties to meet and confer regarding the contents of any fifth amended complaint (Dkt. No. 6-6).  Without meeting and conferring with defendants, plaintiffs filed a fifth amended complaint, asserting federal constitutional claims under Section 1983 for the first time as well as a claim for breach of contract.  Defendants removed the case to federal court here in San Francisco where it was assigned to the undersigned judge.

The fifth amended complaint alleges the following eleven claims:  (i) Section 1983 for due process and equal protection violations, (ii) breach of contract, (iii) unjust enrichment, (iv) California Unfair Competition Law, (v) negligence, (vi) intentional interference with prospective economic relations, (vii) negligent interference with prospective economic relations, (viii) constructive trust, (ix) unfair practices act, (x) due process under the California Constitution, and (xi) equal protection under the California Constitution.

Defendants now move for a more definite statement of the complaint as a whole, as well as a more definite statement of the particular constitutional violations giving rise to the new Section 1983 claim.  Defendants also move to dismiss the Section 1983 claim as against the individual defendants.  Finally, defendants move to dismiss the new breach of contract claim.  This order follows full briefing and oral argument.

**ANALYSIS**

**1.    MOTION FOR A MORE DEFINITE STATEMENT.**

Rule 12(e) provides, "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired."  Our defendants contend that plaintiffs' complaint, which spans forty-five pages and includes numerous conclusory allegations, fails to put defendants on notice of the basis for plaintiffs' claims.  Thus, they argue, a more definite statement is necessary.

Generally, the Court will require a more definite statement only when the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Margarita Cellars v. Pac. Coast Packaging*, 189

5

F.R.D. 575, 578 (N.D. Cal. 1998) (Judge Charles C. Breyer).  Defendants cite *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1998), for the position that "[p]rolix, confusing complaints . . . impose unfair burdens on litigants and judges" who "must prepare outlines to determine who is being sued for what[,]" and that such complaints necessitate a more definite complaint.

Here, plaintiffs' complaint is verbose and includes numerous conclusory allegations, but the theory of plaintiffs' case is clear.  Plaintiffs contend that defendants began enforcing certain regulations applicable to the Patrol Specials and began offering supplemental police services upon request pursuant to Chapter 10B.  This, plaintiffs allege, interfered with the Patrol Specials' relationships to their clients (who are individuals and merchants that sought out private police services) and deprived them of alleged property rights in their assigned beats. Moreover, the fifth amended complaint (unlike prior complaints) identifies particularly who is suing whom for each claim.

Although a more concise and direct complaint would be preferable, the complaint is sufficiently definite that it is reasonable to expect our defendants to respond to the allegations therein.  After nearly four years of motions on the pleadings in state court, it is time for this case to move forward.

Defendants also specifically seek a more definite statement of plaintiffs' constitutional claims, contending that plaintiffs do not identify any specific processes they believe were due to them or how defendants deprived them of fairly utilizing such a process.  Similarly, defendants argue that plaintiffs failed to identify themselves as members of a protected class that could support an equal protection claim.  Finally, defendants argue that the complaint recasts plaintiffs' inverse condemnation claim as a federal claim, even though the state-law claim was already held precluded.  Defendants' arguments relate to the merits of the case, not whether a more definite statement is necessary.

*First*, in support of their equal protection claims plaintiffs allege that defendants applied various regulations and procedures to the Patrol Specials, but not to SFPD officers (Fifth Amd. Compl. ¶¶ 136–37).  Defendants may take the position that membership in the Patrol Specials does not constitute a protected class or that this differential treatment could not constitute a

6

violation, but those issues with the merits of plaintiffs' claims are not proper bases to require a more definite statement. This is a sufficiently clear assertion of a constitutional violation and defendants can admit or deny liability on that (or any other) basis.

*Second*, defendants contend that plaintiffs have failed to identify the basis for claiming any due process violation. Plaintiffs allege that they were deprived of property rights in their respective beats without "any adequate pre or post deprivation remedy" and that defendants failed to provide just compensation for such deprivation (*id.* ¶ 141). This allegation is sufficiently clear. To the extent defendants dispute that any process was due before or after the alleged deprivation, or that such a process remained available, that is an argument on the merits. This allegation is sufficiently definite.

*Third*, defendants argue that plaintiffs have improperly realleged their inverse condemnation claim under federal law even though it was already held precluded when alleged under state law. This is not properly raised on a motion for a more definite statement. On the contrary, defendants' response on this particular issue demonstrates that the complaint is already sufficiently definite to enable them to adequately respond. Defendants could have moved to dismiss under Rule 12(b)(6) on the basis that any federal inverse condemnation claim fails based on the same preclusion issues, but they declined to do so.

Accordingly, defendants' motion for a more definite statement is **DENIED**.

**2.    MOTION TO DISMISS.**

Defendants move to dismiss plaintiffs' Section 1983 claims against all individual defendants. Defendants also move to dismiss plaintiffs' breach of contract claims. Each is addressed in turn.

**A.    Section 1983.**

Plaintiffs assert claims under Section 1983 of Title 42 of the United States Code, which provides a civil action for a deprivation of constitutional or legal rights. An individual's liability under Section 1983 arises "only if he or she personally participated in or directed a violation." *James v. Rowlands*, 606 F.3d 646, 653 n.3 (9th Cir. 2010) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

7

Plaintiffs have failed to plead any facts indicating that any individual defendant personally participated in the alleged constitutional violations. The only allegations regarding the individual defendants *at all* concerns the particular sums that each defendant earned performing work pursuant to Chapter 10B (Fifth Amd. Compl. ¶ 97). Plaintiffs failed to indicate that they could plead any facts regarding any particular individual defendant's role in the alleged constitutional violations on a *sixth* amended complaint. Accordingly, the Section 1983 claims against the individual defendants are hereby **DISMISSED** without leave to amend.

### B.     Breach of Contract.

Plaintiffs' second claim alleges, "Plaintiffs and Defendants entered into an agreement founded on an instrument in writing, namely, the San Francisco Charter" (Fifth Amd. Compl. ¶ 161). Plaintiffs further allege, "Defendants offered and Plaintiffs accepted to be designated Patrol Special Police Officers and the owners of beats under the San Francisco Charter" (*id.* ¶ 162).

In their motion, defendants argue that the City Charter cannot establish contractual rights because neither the language therein nor the circumstances of its passage "clearly . . . evince a legislative intent to create private rights of a contractual nature enforceable against the governmental body." *See Retired Employees Assoc. of Orange County, Inc. v. County of Orange*, 52 Cal. 4th 1171, 1177 (2011). Plaintiffs clarify that their theory is not that the Charter *itself* formed a contract, but rather that when the Police Commission granted beats to the Police Specials as contemplated by the Charter, that transaction included oral and implied promises, including a promise that the Police Commission would not interfere with plaintiffs' rights to patrol the beats beyond regulation. That is, the agreement at issue is "founded on" the Charter only to the extent the transaction was contemplated by the Charter.

Defendants reply that, even accepting plaintiffs' explanation, the City cannot be bound by any oral or implied promises, citing *Katsura v. City of San Buenaventura*, 155 Cal. App. 4th 104, 109 (2007). That decision held an alleged oral agreement unenforceable because "[t]here is no provision in the City charter for execution of oral contracts by employees of the City who do not have requisite authority," and "with respect to municipal contracts . . . the mode of

8

contracting, as prescribed by the municipal charter, is the measure of the power to contract, and a contract made in disregard of that prescribed mode is unenforceable."

Section 6.102(6) of the City Charter requires the City Attorney to "approve as to form *all* . . . contracts." Thus, defendants argue, because the City Attorney did not approve any oral or implied agreement with the Police Specials, any such agreement is unenforceable. Not so.

Section 6.102(6) sets forth the responsibilities of the City Attorney. It does not preclude the possibility that an agreement entered into by the City could include implied terms. At this stage, plaintiffs have plausibly alleged that the City's grants of beats to officers of the Patrol Specials constituted contracts and that such contracts included as implied terms the City's obligation to maintain the viability of the grant and to refrain from interfering with the exercise of rights therein (except by regulation). Defendants' disputes as to those issues are better resolved on a full evidentiary record. Accordingly, defendants' motion to dismiss plaintiffs' contract claims is **DENIED**.

**CONCLUSION**

For the reasons stated above, defendants' motion for a more definite statement is **DENIED**. Defendants' motion to dismiss the Section 1983 claims against the individual defendants is **GRANTED**. Defendants' motion to dismiss the breach of contract claim is **DENIED**. Plaintiffs shall file an amended complaint consistent with this order within **FOURTEEN CALENDAR DAYS**.

Within **FORTY-TWO CALENDAR DAYS**, defendants may file a summary judgment motion drawn solely to plaintiffs' remaining Section 1983 claims for based on due process, equal protection, contracts clause, and inverse condemnation.

**IT IS SO ORDERED.**

Dated: April 4, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9